**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.W. and R.W.**

**No. 20-0830** (Harrison County 19-JA-61-2 and 19-JA-62-2)

## MEMORANDUM DECISION

Petitioner Father E.C., by counsel Bryan D. Church, appeals the Circuit Court of Harrison County's September 17, 2020, order terminating his parental and custodial rights to A.W. and R.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel James Wegman, filed a response in support of the circuit court's order. Petitioner's guardian ad litem, Allison S. McClure, filed a response in support of petitioner's appeal. The children's guardian ad litem Julie N. Garvin, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental and custodial rights upon a finding that there was no reasonable likelihood that he could substantially correct the conditions of abuse and neglect at issue and denying him post-termination visitation with the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2019, the DHHR filed an abuse and neglect petition alleging that petitioner's home was unsuitable for the children and that petitioner engaged in domestic violence with the mother and had a history of substance abuse. At the preliminary hearing, a Child Protective Services ("CPS") worker testified that petitioner had been charged with malicious assault against an individual whom he accused of hiding his children and was charged with trespassing and being a prohibited person in possession of a firearm for an incident in which he took a rifle to the maternal

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

grandparents' home. According to the CPS worker, petitioner had an extensive history of domestic violence and methamphetamine abuse. The DHHR also attached to its petition a competency evaluation of petitioner that indicated he had been using methamphetamine frequently for a year, which resulted in mental health issues such as extreme paranoia and erratic behavior. According to the CPS worker, petitioner was ordered not to have contact with the children as a term of his criminal bond, yet the worker found petitioner and the children together in his home. In regard to petitioner's residence, the CPS worker testified that it was a camper without its own electricity, as the worker observed an extension cord running from the paternal grandmother's home to the camper. The camper was also cluttered and dirty with trash and food throughout. Ultimately, the court ratified the DHHR's taking emergency custody of the children.

In July of 2019, the circuit court held an adjudicatory hearing, during which psychologist Dr. Edward Baker testified that he evaluated petitioner on two occasions. The first was a competency evaluation for petitioner's criminal cases and the second was a parental fitness evaluation for the current matter. Across the two evaluations, petitioner denied any drug abuse, was reluctant to even discuss the issue, and denied having abused or neglected the children. Petitioner also believed that he exhibited high control of his anger, despite a lengthy history of domestic violence. In short, petitioner was generally defensive and unwilling to admit personal fault or any negative aspects of his conduct. This led Dr. Baker to conclude that petitioner had a "marginal ability to parent" because he did "not identify his own weaknesses and overlook[ed] how his behavior can impact his children." During petitioner's testimony he admitted that his home incarceration was revoked for drinking alcohol. He also denied any domestic violence in his relationship with the mother and attempted to minimize his drug use by indicating that he only used methamphetamine occasionally. Petitioner also denied that he behaved erratically when abusing the drug. Finally, when asked whether he believed that he acted in a way that caused his children to suffer any emotional distress or harm, petitioner responded "no." The children's mother then testified to numerous instances of domestic violence with petitioner and petitioner's paranoid behavior when abusing methamphetamine. The children's maternal grandmother also testified and corroborated petitioner's abusive conduct toward the mother. She also testified to the incident in which petitioner came to her home with a rifle and was subsequently arrested. The circuit court then held a second adjudicatory hearing, during which several law enforcement officers testified to petitioner's criminal conduct, including his arrest for violence against the mother. Ultimately, the court adjudicated petitioner as an abusive and neglectful parent based upon his drug use and perpetration of domestic violence.

In September of 2019, the circuit court held a dispositional hearing. Petitioner attended the hearing, although he was incarcerated at the time. According to testimony from a DHHR employee, petitioner had not undergone any mental health or substance abuse treatment. The DHHR employee further testified that even if petitioner were released from incarceration, petitioner's ability to correct the conditions of abuse and neglect would still require petitioner's willingness to acknowledge that his conduct put the children's safety at risk. Petitioner then testified in support of his motion for an improvement period, indicating that he would be willing to participate in services designed to remedy the conditions of abuse and neglect. Although petitioner did admit that he abused substances, he went on to qualify his drug use by asserting as follows:

[H]as there been substance abuse by both of us [the parents], yeah. Yeah there has. Has there been a time where my children have ever been in danger . . . because of me personally being . . . under the influence of anything, no. That's never happened, not one time.

When asked if he believed his substance abuse negatively impacted the children, petitioner responded as follows: "It could've. The fact that I feel that they've been kept from me for so long has also had a complete negative impact on them." When asked what he believed he had done wrong as a parent, petitioner indicated that "[t]he biggest thing [he could] say is just not spending as much time with [the] kids as [he] should've." Petitioner then asserted that if his children "were never taken and kept from me" that he "would still have [his] kids," that he would not have been charged for any criminal conduct, and that he felt "like it's pretty much been pushed on" him.

Based on the evidence, the circuit court found that petitioner believed that he had not done anything wrong and had not "accepted any level of responsibility for [his] actions that brought about the filing of the petition." The court further found that it had "never had two witnesses in the same case that had such a low level of credibility" as petitioner and the mother in the current matter. As such, the court found that petitioner failed to satisfy his burden for obtaining an improvement period. The court further found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect and that termination of his parental and custodial rights was necessary for the children's welfare. The court then terminated petitioner's parental and custodial rights and denied his request for post-termination visitation, finding that the children's young ages—five and two years old, respectively—warranted a denial of ongoing contact with petitioner.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[2]The mother's parental and custodial rights were also terminated below. The permanency plan for the children is adoption together in the current foster home.

On appeal, petitioner argues that it was error to terminate his parental and custodial rights upon a finding that there was no reasonable likelihood that he could substantially correct the conditions of abuse and neglect in the near future and because less-restrictive dispositional alternatives were available. Without belaboring petitioner's specific arguments, we find that the resolution of this matter turns entirely upon petitioner's failure to acknowledge the conditions of abuse and neglect at issue.

As this Court has routinely held,

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). The evidence below was uncontroverted that petitioner failed to acknowledge or accept responsibility for the children's abuse and/or neglect, as the circuit court found. While it is true that petitioner admitted to a substance abuse issue, he nonetheless refused to acknowledge that his substance abuse harmed the children. He further denied domestic violence with the mother, despite an extensive history, and minimized the impact of his conduct. Tellingly, petitioner asserted that he was merely the victim of outside forces having removed his children and that he would not have found himself in his current position, including his pending criminal charges, had his children never been taken from his custody. In short, petitioner rendered the conditions of abuse and neglect at issue wholly untreatable through his failure to accept the basic truth of his conduct. This fact is determinative of all issues raised on appeal.

Indeed, the circuit court cannot be said to have erred in denying petitioner an improvement period to correct conditions of abuse and neglect that he refused to acknowledge existed. While petitioner argues that he established that he was likely to fully participate in an improvement period, as required to obtain one under West Virginia Code § 49-4-610, he nevertheless ignores the fact that his failure to acknowledge the abuse and neglect at issue resulted in an improvement period being an exercise in futility. As we have explained, a circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Therefore, it is clear that the circuit court did not err in denying petitioner an improvement period.

This same evidence also supports the circuit court's termination of petitioner's parental and custodial rights. Again, petitioner's refusal to acknowledge the conditions of abuse and neglect resulted in those conditions being untreatable, which fully supports the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future.[3] West Virginia Code § 49-4-604(d) defines "[n]o reasonable

---

[3]In support of his argument that the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future was in error, petitioner asserts that the circuit court's order cites incorrect language from

4

likelihood that conditions of neglect or abuse can be substantially corrected" as meaning "that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Given petitioner's inability to correct the conditions of abuse and neglect due to his refusal to acknowledge them, it is clear the circuit court did not err in making this finding. Additionally, the court found that the children's welfare required termination of petitioner's parental and custodial rights, given his failure to address or even acknowledge the impact of his conduct upon them. Under West Virginia Code § 49-4-604(c)(6), a circuit court may terminate parental and custodial rights upon these findings. Further, as this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's termination of petitioner's parental and custodial rights.

Finally, petitioner argues that the circuit court erred in denying his motion for post-termination visitation with the children. According to petitioner, the circuit court cited the children's tender ages and the other evidence presented in making this decision without providing specificity as to why post-termination visitation was inappropriate. Petitioner argues that this is insufficient to support the decision. We do not agree.

This Court has held as follows:

> "When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being

---

West Virginia Code § 49-4-604(d) setting forth a circumstance in which it can be assumed there is no such reasonable likelihood. It is unnecessary to address this specific argument, however, because the circuit court correctly cited several circumstances in which it can be presumed that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected under this subsection, demonstrating that the incorrect language to which petitioner cites was not determinative of the finding at issue. More importantly, however, is the Court's analysis above regarding petitioner's failure to acknowledge the conditions of abuse and neglect and his resulting inability to correct these conditions. Because this analysis is determinative, this argument entitles petitioner to no relief.

and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Based on our review of the record, it is clear that continued contact with petitioner was not in the children's best interest, especially in light of the fact that he refused to accept that his extensive, egregious conduct had any negative impact on the children or that he committed any parental errors beyond not spending enough time with the children. Even more importantly, the evidence does not establish that petitioner and the children had a close emotional bond. While it is true that petitioner testified that a bond existed, the circuit court found that his testimony was entirely without credibility and was, in fact, some of the least credible testimony the court had encountered in decades. We will not disturb this finding on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Because the evidence did not indicate that continued contact would not be detrimental to the children's wellbeing, we find no error in the circuit court's denial of post-termination visitation.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 17, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: April 20, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

6